UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

RONALD W. HARRIS, SR.,

                      Plaintiff,                    **DECISION AND ORDER**

    -against-                                            17-cv-6312 (AEK)

COMMUNITY HOUSING MANAGEMENT CORP.,
HUGUENOT HOUSING ASSOCIATES, LLC, and
OWNER OF THE HUGUENOT HOUSE,

                      Defendants.
------------------------------------------------------------------X

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.**[1]

       Plaintiff Ronald W. Harris, Sr. ("Plaintiff"), proceeding pro se, brings this action against Defendants Community Housing Management Corp. ("CHMC") and Huguenot Housing Associates, LLC ("HHA") (CHMC and HHA are collectively referred to herein as "Defendants"[2]), asserting claims for disability discrimination under the Fair Housing Act

---

[1] The parties originally consented to the jurisdiction of Magistrate Judge Lisa Margaret Smith for all purposes pursuant to 28 U.S.C. § 636(c) on November 1, 2018. ECF No. 27. On October 15, 2020, this case was reassigned to the undersigned.

[2] Although Plaintiff names "Owner of the Huguenot House" as a purported third defendant, no answer has been filed by this purported defendant, nor has any attorney separately entered a notice of appearance. That said, the evidence in the record is clear that the owner of Huguenot House is HHA. See ECF No. 62 ("Conroy Aff.") ¶ 3 ("The plaintiff is a tenant at defendant Huguenot House Associates LLC which owns and operates a senior citizen housing facility in New Rochelle, New York."); Conroy Aff. Ex. 8 ("Conroy Depo.") at 7:3-15 (testimony that the building is owned by "Huguenot House, LLC"). In addition, a document attached to Plaintiff's original Complaint filed in this action provides a list of CHMC's "Managed Properties" and states that the owner of Huguenot House Apartments is HHA, and that the building participates in the "HUD NC" and "Section 8" programs. ECF No. 2-1 at 46.

       The instant motion for summary judgment is filed on behalf of "defendants" collectively. See ECF No. 60. Accordingly, the Court treats the purported defendant "Owner of the Huguenot House" as indistinguishable from Defendant HHA, which has appeared through counsel—the two are, in effect, one and the same. Any action taken in this litigation by HHA is also deemed

("FHA") and the Americans with Disabilities Act ("ADA"). ECF No. 13 (Amended Complaint). Currently before the Court is Defendants' motion for summary judgment (ECF Nos. 60, 72[3]). For the reasons that follow, Defendants' motion is GRANTED, and the case is dismissed as moot.

I.   **BACKGROUND**

   A.   **Procedural History**

Plaintiff commenced this action by filing a Complaint on August 17, 2017. ECF No. 2. On October 11, 2017, then-Chief Judge Colleen McMahon issued an Order to Amend, granting Plaintiff "leave to file an amended complaint within sixty days of the date of this order to detail his discrimination claims." ECF No. 6 ("Order to Amend") at 1. Judge McMahon explained that Plaintiff, "a disabled double-amputee senior with two mechanical legs, asserts that [CHMC] discriminated against him by failing to provide him with a parking spot near the entrance of his building, the Huguenot House in New Rochelle, and then retaliated against him for requesting one." Id. at 2. In the original Complaint, Plaintiff named as Defendants CHMC; Eugene Conroy, the President of CHMC; "Community Housing Management Staff"; Roberta Fox, CHMC's Housing Manager; Nebelil Coulibaly, the Superintendent of Huguenot House; John Savage, a CHMC employee who worked at Huguenot House; Garrie Pest Control; Kenneth Saltzman, counsel for CHMC; and the New Rochelle Police Department. Id. As described by Judge McMahon, the original "209-page complaint – relying exclusively on correspondence and

---

to be taken on behalf of "Owner of the Huguenot House," and this Decision and Order, which disposes of Plaintiff's claims against CHMC and HHA, also therefore necessarily disposes of Plaintiff's claims against "Owner of the Huguenot House" as well.

   [3] It is unclear why ECF No. 72, which is a duplicate of ECF No. 61 (Amended Memorandum of Law), is docketed as a motion on ECF, but this Decision and Order resolves both of the items identified as pending motions on the docket.

court submissions dating from 2014 to 2016, as well as copies of statutes and regulations – does not include a statement of facts or indicate that Plaintiff is entitled to any relief." Id.

Among the facts that Judge McMahon derived from the original Complaint were the following:

> On June 14, 2016, the U.S. Department of Housing and Urban Development ("HUD") accepted for filing Plaintiff's complaint for housing discrimination and notified CHMC that Plaintiff's claims arise under Title VI of the Civil Rights Act and the Rehabilitation Act because CHMC receives federal financial assistance (Section 8). HUD referred Plaintiff's FHA claims to the New York State Division of Human Rights ("DHR") for investigation and retained jurisdiction over the Title VI and Rehabilitation Act claims. (Compl. at 24.)
>
> In response to Plaintiff's claims with DHR and HUD, CHMC created two handicapped spaces in Huguenot House's parking lot on July 21, 2016. (Id. at 72, 74-75.) In a letter dated July 27, 2016, Plaintiff claimed that the two handicapped parking spaces created by CHMC were not ADA-compliant because they were not "across from the building entrance"; he also claimed that he did not have access to the newly created handicapped spaces. (Id. at 8.)

ECF No. 6 at 2-3. Judge McMahon explained that the allegations related to then-defendants Garrie Pest Control, Coulibaly, Savage, and the New Rochelle Police Department derived from previous entries into Plaintiff's apartment to conduct extermination work, and that Plaintiff alleged that Conroy and Fox took bribes from Garrie Pest Control. Id. at 3-4. Saltzman was named as a defendant "because he represented CHMC in various actions that Plaintiff initiated." Id. at 6.

Judge McMahon dismissed Plaintiff's claims against Garrie Pest Control, Savage, Coulibaly, and Saltzman for lack of subject matter jurisdiction because they neither arose under federal law nor fell within the Court's diversity jurisdiction; dismissed the claims against the New Rochelle Police Department for failure to allege a federal claim against any New Rochelle police officer; and dismissed "Community Housing Management Staff" from the action as an

3

improperly named defendant. Id. at 5-9. Plaintiff was granted Plaintiff leave to amend his complaint "to detail his ADA, Rehabilitation [Act], and FHA claims against CHMC, Conroy, and Fox," but Judge McMahon cautioned that "[b]ecause Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wishes to maintain must be included in the amended complaint." Id. at 8.

Plaintiff filed an Amended Complaint on April 4, 2018. ECF No. 13 ("Am. Compl."). The Amended Complaint, which is the current operative complaint, names only three defendants—CHMC, Huguenot Housing Associates, LLC, and Owner of the Huguenot House—and asserts federal jurisdiction on the ground that Plaintiff's claims arise under the FHA, unspecified federal civil rights law, and the ADA. Am. Compl. at 2.

Despite the dismissal of Plaintiff's claims against Garrie Pest Control, Savage, and Coulibaly for lack of subject matter jurisdiction in the Order to Amend, the Amended Complaint includes allegations against Coulibaly, Savage, and Garrie Pest Control related to entry into Plaintiff's apartment to exterminate. The only difference is that Plaintiff labels these allegations discrimination, harassment, and retaliation, citing the FHA and "U.S. Civil Rights Law." See Am. Compl. at 5-7. Nonetheless, the labels do not transform the allegations into federal claims; moreover, none of these parties are properly identified as defendants in the Amended Complaint. While courts "liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest," McLeod v. Jewish Guild for the Blind, 864 F.3d 154, 156 (2d Cir. 2017) (per curiam) (quotation marks omitted), even the most liberal construction of Plaintiff's pleadings does not permit the Court to conclude that Plaintiff has properly pled actionable federal claims against Coulibaly, Savage, and Garrie Pest Control. Accordingly, to the extent the Amended Complaint could possibly be interpreted to attempt to

4

raise claims against Coulibaly, Savage, or Garrie Pest Control, those claims are dismissed for the same reasons articulated in Judge McMahon's October 11, 2017 order. The only potentially actionable claims in the Amended Complaint are for disability discrimination in violation of the FHA and ADA[4] against Defendants CHMC and Huguenot Housing Associates, LLC based on their alleged failure to provide Plaintiff with an accessible parking space.

Following the filing of the Amended Complaint and Defendants' answers, see ECF Nos. 18-19,[5] the parties engaged in discovery. At the conclusion of discovery, Defendants sought leave to file a motion for summary judgment, see ECF No. 53, and a briefing schedule for the motion was set during a conference held on March 18, 2020. See Docket Sheet, Minute Entry for March 18, 2020.

### B.   Factual Background

The following facts relevant to the Court's determination of this motion are undisputed unless otherwise noted and are taken from Defendants' "Material Statement of Facts" ("Defs.' St. of Facts")[6] and the evidence submitted by the parties in connection with the motion.

Plaintiff has an apartment in Huguenot House, a federally subsidized housing facility in New Rochelle, New York. ECF No. 62 ("Conroy Aff.") Ex. 8 ("Conroy Depo.") at 5:20-6:24;

---

[4] Plaintiff does not invoke the Rehabilitation Act anywhere in the Amended Complaint.

[5] ECF Nos. 18 and 19 are duplicate copies of Defendants' answer to the Amended Complaint.

[6] Defendants did not file a separate document styled as a Local Civil Rule 56.1 statement of undisputed facts as part of their motion for summary judgment, even though this requirement, set forth in the Local Civil Rules of the Southern and Eastern Districts of New York, is well established. See Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 74 (2d Cir. 2001) ("The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties."). That said, Defendants did include a section in their memorandum of law in support of the motion for summary judgment titled "Material Statement of Facts," and listed facts in that section in a series of 33 numbered paragraphs supported with citations to the evidentiary record.

Conroy Aff. Ex. 9 ("Fox Depo.") at 11:22-12:7; see Conroy Aff. ¶¶ 3, 5.  HHA owns the building, and CHMC is the managing agent for the building.  Defs.' St. of Facts ¶ 2.  Plaintiff initially filed a complaint against CHMC with the Westchester County Human Rights Commission in 2015, seeking an accessible parking space at Huguenot House.  Id. ¶ 3; see ECF No. 69 ("Pl.'s Opp'n") at 9-11 (copy of Verified Complaint filed with Westchester County Human Rights Commission).  Eventually, Plaintiff withdrew his complaint with the Westchester County Human Rights Commission, see ECF No. 70 ("Pl.'s Aff. Pt. 1") at 7-9, and filed a

---

See ECF No. 61 ("Pl. Mem. of Law.") at 2-9.  This is substantively the same as what should have been included in a separately filed Local Civil Rule 56.1 statement.  Citations in this Decision and Order to "Defs.' St. of Facts" are refences to paragraphs from the Material Statement of Facts section of Defendants' memorandum of law.

In addition, Defendants served upon Plaintiff a document erroneously docketed at ECF No. 65 as "Rule 56.1 Statement," consisting of an Affirmation of Service, attached to which are copies of Rule 56 of the Federal Rules of Civil Procedure and "Notice to Pro Se Litigant Who Opposes a Rule 12 Motion Supported by Matters Outside the Pleadings."  Although this is not the notice required by Local Civil Rule 56.2 ("Notice to Pro Se Litigant Who Opposes a Summary Judgment"), the notice does state, in all capital letters, that "THE CLAIMS YOU ASSERT IN YOUR COMPLAINT MAY BE DISMISSED WITHOUT A TRIAL IF YOU DO NOT RESPOND TO THIS MOTION ON TIME by filing sworn affidavits as required by Rule 56(c) and/or other documents."  ECF No. 65.  Although Plaintiff did not file in response his own Local Civil Rule 56.1 Statement in accordance with Local Civil Rule 56.1(b), he did file opposition papers including all of the evidence that he believes constitutes grounds for denying the motion.  ECF Nos. 69-70.

Because Defendants have included the appropriate substantive information in their filings, and because Plaintiff has filed an opposition to the motion that includes evidence in an attempt to support his position, the Court will accept the "Material Statement of Facts" and the "Notice to Pro Se Litigant Who Opposes a Rule 12 Motion Supported by Matters Outside the Pleadings" as compliance with the requirements of Local Civil Rules 56.1 and 56.2 for purposes of this motion only.  Holtz, 258 F.3d at 73 ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules.").

The pages of Defendants' filings in support of their motion for summary judgment (including Defendants' "response" submission at ECF No. 79) are not numbered.  Accordingly, citations to page numbers in those documents refer to the page numbers automatically assigned by ECF, the Court's electronic case filing system.

separate complaint with HUD, claiming that he was being discriminated against by CHMC as a result of the failure to provide him with a suitable parking space. Conroy Aff. Ex. 6 ("Santiago Depo.") at 12:20-24; ECF No. 2 ("Compl.") at 24 & 26 (on HUD Housing Discrimination Complaint form, in summarizing what happened, Plaintiff wrote "No disable [sic] parking . . ."). Although HUD at first referred the complaint to DHR, the complaint was referred back to HUD at some point in 2017 and assigned to Jaime Santiago, an Equal Opportunity Specialist. Defs.' St. of Facts ¶¶ 7-9. Santiago investigates discrimination claims and determines whether there is "reasonable cause" to support such claims. Id. ¶ 9; see Santiago Depo. at 5:7-11, 6:24-7:13.

With respect to Plaintiff's complaint, Santiago stated that he was obligated by law to try to facilitate a settlement between the parties. Defs.' St. of Facts ¶¶ 10, 17. Santiago met with Plaintiff once in person and spoke to Plaintiff on the phone many times regarding his complaint. Id. ¶¶ 11-12. Santiago acted as a mediator between Plaintiff and Defendants in negotiating a settlement agreement, conveying an initial demand from Plaintiff of $25,000 in addition to the parking space, and then communicating several counteroffers between the parties. Id. ¶ 17. Plaintiff eventually accepted an offer from CHMC of $6,000, payable by HHA. Id. ¶ 18; Santiago Depo. at 53:15-54:11; Conroy Aff. Ex. 7 ("Harris Depo.") at 32:7-21; Conroy Aff. Ex. 4 (copy of the check).

Santiago then drafted a Voluntary Compliance Agreement ("VCA"), a document used by HUD to memorialize certain types of settlement agreements. Defs.' St. of Facts ¶¶ 21-22 & Conroy Aff. Ex. 3 (copy of the VCA). Defendants eventually sent the settlement check to Santiago, and he forwarded the check to Plaintiff. Defs.' St. of Facts ¶ 25. Plaintiff refused to cash the check, however, and informed Santiago that he objected to the language on the back of the check. Id. ¶ 26; see Harris Depo. at 38:18-20. After further negotiation between HUD and

Plaintiff, Plaintiff agreed to accept the check with different language on the back. Defs.' St. of Facts ¶ 26. Defendants issued a replacement check with the language that was acceptable to Plaintiff, and Plaintiff deposited or otherwise negotiated the check. Id. ¶ 27; see Santiago Depo. at 59:9-60:19; Harris Depo. at 40:23-41:2 ("Q. Did you cash that check or deposit it? What did you do with that check? A. I cashed it."). The language on the back of the settlement check that Defendants maintain was cashed by Plaintiff states, "Accepted as payment in full of all claims in HUD Case Nos. 02-16-4344-08/02-16-0054-4/02-16-0034-6." Defs.' St. of Facts ¶ 28 & Conroy Aff. Ex. 4. The three case numbers listed on the back of the check correspond to all of the claims that Plaintiff had filed with HUD. Defs.' St. of Facts ¶ 29.[7]

After signing the VCA and forwarding the check to be sent to Plaintiff, Defendants created three additional wheelchair accessible parking spaces at Huguenot House. ECF No. 70-1

---

[7] Plaintiff's original Complaint included a letter dated June 14, 2016, sent by HUD to Roberta Fox of CHMC, which states in the subject line:

Housing Discrimination Complaint

Harris, Ronald v. Community Housing Management Corp., et al.

| | |
|---|---|
| Inquiry No.: | 511484 |
| HUD File No.: | 02-16-4344-8 |
| Title VI Case No.: | 02-16-0034-6 |
| Section 504 Case No.: | 02-16-0054-4 |

Compl. at 24. The three claims in Plaintiff's HUD case were (1) discrimination under the FHA, (2) discrimination under Title VI of the Civil Rights Act, and (3) discrimination under Section 504 of the Rehabilitation Act. Id. Title VI prohibits discrimination based on race, color, or national origin. 42 U.S.C. § 2000d. "Section 504 of the Rehabilitation Act prohibits programs and activities receiving federal financial assistance from excluding, denying benefits to, or discriminating against 'otherwise qualified' disabled individuals." McElwee v. Cty. of Orange, 700 F.3d 635, 640 (2d Cir. 2012) (citing 29 U.S.C. § 794(a)). The Amended Complaint does not specifically refer to either Title VI or the Rehabilitation Act.

("Pl.'s Aff. Pt. 2") at 39 (Letter dated February 1, 2018, from CHMC to Plaintiff) ("February 1 Ltr."); see Santiago Depo. at 48:14-49:9 (CHMC created three accessible parking spots), 71:10-17 (after Santiago sent the check to Plaintiff, he believes that Defendants sent him "the pictures of the parking spots that were created"). The February 1, 2018 letter offered Plaintiff "a handicapped parking space with aisle access in the front parking lot at Huguenot House"; Conroy, on behalf of CHMC, explained in the letter that parking spaces #1, #3 & #5 had been modified for wheelchair access, and stated that Defendants were "hereby requesting that [Plaintiff] choose one of the aforementioned parking spaces." February 1 Ltr. The letter further stated that if Plaintiff did not respond to the letter by February 15, 2018, the parking spaces would be offered to other residents. Id. The letter was copied to Santiago. Id.

CHMC sent Plaintiff a second letter on March 19, 2018, which stated that it was "the final formal offer for a handicapped parking space with aisle access in the front parking lot at Huguenot House." ECF No. 76 at 16. Plaintiff was advised that if CHMC did not "receive a response to this letter by Wednesday, April 4, 2018, [it would] offer these spaces to other residents." Id. Eventually, Plaintiff verbally refused the offer of one of the new parking spaces. Fox Depo. at 23:12-24:2; see also Conroy Depo. at 28:11-19; Santiago Depo. at 49:10-18, 71:23-72:2.

### C. The Instant Motion

After this motion was fully submitted, Plaintiff wrote a letter to the Court dated August 5, 2020 (filed on August 21, 2020), stating that "[t]he New York State Department of Motor Vehicles has determined that my license will not be renewed due to my medical conditions." ECF No. 75. In response, the Court issued an Order which stated, in relevant part, as follows:

> In this case, Plaintiff asserts claims of disability discrimination based on Defendants' failure to provide Plaintiff with an accessible parking space at

>       the building where he lives. However, Plaintiff's letter raises the question
>       of whether Plaintiff's claims have been mooted. Accordingly, the Court
>       hereby orders Plaintiff to submit an affidavit addressing the status of his
>       driver's license as well as any documents evidencing the determination not
>       to renew Plaintiff's driver's license.

ECF No. 77. The Order further directed Defendants to "serve and file a response to Plaintiff's affidavit in which they address the question of whether, based upon the non-renewal of Plaintiff's driver's license, he no longer has standing to prosecute this action, as well as any other arguments they may have that this action has thereby been rendered moot." Id.

Plaintiff filed a letter on October 23, 2020, which states that in December 2019, Plaintiff visited a medical practice known as the Eye Specialists of Westchester, and "due to chronic eye condition at this time he fails to meet visual vision requirement for operating a motor ve[hicle]. See attached eye exam records." ECF No 78. Attached to the letter is a note from Bradley H. Scharf, M.D. of Eye Specialists of Westchester, dated September 30, 2020, which states, "Ronald W. Harris, Sr. is a patient of my ophthalmology practice. Due to chronic eye conditions, he fails to meet the legal vision requirements for operating a motor vehicle." Id. at 3. Plaintiff also provided a photocopy of both his New York State driver's license, which expired on December 24, 2019, and his New York State non-driver identification card, which was issued on June 26, 2020. Id. at 4.

Defendants filed a response to Plaintiff's October 23, 2020 letter, in which they argue, with respect to mootness, that Plaintiff did not have a personal stake in the outcome of this litigation, noting, among other things, that Plaintiff admitted at his deposition that "he has not operated a motor vehicle since at least June or July of 2015" and "stated that he permanently

10

relinquished his vehicle in the [winter] of 2016 or 2017." ECF No. 79 ("Defs.' Response") at 3 (citing Harris Depo. at 25:15-17, 23:16-25[8]).

In a subsequent document filed on April 28, 2021 entitled "Statement of Facts," Plaintiff states that "[i]n June/July 2020, Dr. Scharf submitted an Affidavit to the U.S. Court stating that Mr. Harris had suffered from chronic eye disease for over 35 years.[9] . . . A demand was made by Mr. Harris to Eye Specialists of Westchester and Dr. Scharf's statement that Mr. Harris has had chronic eye disease for 35 plus years and his chronic eye disease did exist on October 8, 2020. Dr. Aaron H. Cohen ordered a standard eye test to be given to Mr. Harris of which Mr. Harris passed." ECF No. 84 ("Statement of Facts") ¶ 2. Plaintiff also states that "[o]n October 8, 2020 Dr. Bradley Scharf made statements in his opinion regarding the recertification of Mr. Harris' license which was based on equipment that is not used in any New York State Department of Motor Vehicles within that 45 year span. Mr. Harris had been driving his car to the medical office of the Eye Specialists of Westchester. There has been no notification from Dr. Scharf to the State of New York in reference to his chronic eye disease." Id. ¶ 3. But the Court has not been provided any statements from Dr. Scharf from October 8, 2020, nor has any evidence been provided regarding the "standard eye test" purportedly performed by Dr. Cohen or whether that test revealed anything about Plaintiff's qualification to operate a motor vehicle.

## II.   DISCUSSION

### A.   Standard for Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment should

---

[8] While Defendants' response letter erroneously states that Plaintiff testified that he sold his car in the summer of 2016 or 2017, Defendants accurately describe and cite that testimony— that Plaintiff sold his car in the winter of 2016 or 2017—in their Material Statement of Facts. See Defs.' St. of Facts ¶ 33; Harris Depo. at 23:23-24.

[9] No affidavit from Dr. Scharf has been filed in this case.

11

be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 320-23 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, a court should "constru[e] the evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences in its favor." Mount Vernon Fire Ins. Co. v. Belize NY, Inc., 277 F.3d 232, 236 (2d Cir. 2002); Farias v. Instructional Sys., Inc., 259 F.3d 91, 97 (2d Cir. 2001); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 764 (2d Cir. 1998); see also Anderson, 477 U.S. at 261 n.2. Thus, "[o]nly when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." Cruden v. Bank of New York, 957 F.2d 961, 975 (2d Cir. 1992) (quoting H.L. Hayden Co. v. Siemens Med. Sys. Inc., 879 F.2d 1005, 1011 (2d Cir. 1989)).

In cases involving pro se litigants, on a motion for summary judgment, the court reads the pleadings "liberally and interpret[s] them to raise the strongest arguments that they suggest." Jorgensen v. Epic/Sony Records, 351 F.3d 46, 50 (2d Cir. 2003) (quotation marks omitted). Nonetheless, "application of this different standard does not relieve [the pro se party] of his [or her] duty to meet the requirements necessary to defeat a motion for summary judgment." Id. (quotation marks omitted). Where pro se parties do not adhere to Local Civil Rule 56.1 and its requirements concerning statements of undisputed facts, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules . . . [and] it may in its discretion opt to 'conduct an assiduous review of the record' even where one of the parties has failed to file such a statement." Holtz, 258 F.3d at 73 (quotation marks omitted). "Courts in

this Circuit typically forgive a pro se plaintiff's failure to file a Local Rule 56.1 Statement, and generally conduct their own independent review of the record." Lloyd v. Holder, No. 11-cv-3154 (AT), 2013 WL 6667531, at *5 (S.D.N.Y. Dec. 17, 2013).[10]  Here, despite the fact that Plaintiff has not filed a Local Rule 56.1 Statement, the Court has undertaken a careful and thorough review of all of the materials filed by Plaintiff in support of his arguments.

### B. Mootness

"The federal courts are courts of limited jurisdiction, their powers circumscribed at their most basic level by the terms of Article III of the Constitution, which states that they may hear only 'Cases' or 'Controversies.'" Russman v. Bd. of Educ. of Enlarged City Sch. Dist. of City of Watervliet, 260 F.3d 114, 118 (2d Cir. 2001) (citing U.S. Const. art. III, § 2, cl. 1).  "[A]t all times, the dispute before the court must be real and live, not feigned, academic, or conjectural," and the "requisite dispute must persist throughout the litigation . . . and if the dispute should dissolve at any time due to a change in circumstances, the case becomes moot." Id.  "Whenever mootness occurs, the court . . . loses jurisdiction over the suit, which therefore must be dismissed." Id. at 118-19.  "Under the doctrine of mootness, the plaintiff's 'personal stake' in the outcome of the litigation 'must be extant at all stages of review, not merely at the time the complaint is filed.'" Stagg. P.C. v. U.S. Dep't of State, 983 F.3d 589, 601 (2d Cir. 2020) (quoting United States v. Sanchez-Gomez, 138 S. Ct. 1532, 1537 (2018)).  "When the plaintiff no longer has a legally cognizable interest in the outcome of the action, the case becomes moot and is no longer a 'case' or 'controversy' for the purposes of Article III." Id.  "The hallmark of a

---

[10] In accordance with Lebron v. Sanders, 557 F.3d 76 (2d Cir. 2009) and Local Rule 7.2 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York, copies of this case and other cases that are unpublished or only available by electronic database shall be simultaneously mailed to the pro se Plaintiff along with this Decision and Order.

13

moot case or controversy is that the relief sought can no longer be given or is no longer needed." Martin-Trigona v. Shiff, 702 F.2d 380, 386 (2d Cir. 1983).

### C.     Analysis

The crux of Plaintiff's case is that Defendants discriminated against him based on their failure to provide him with an accessible parking space at Huguenot House. See Am. Compl. ¶¶ 33-34, 39 (CHMC, "my landlord/management company, discriminated against me by failing to provide me with a parking space that I can access from my apartment building. . . . For several years, I have made attempts to get them to provide me a parking space that was accessible to me. . . . At no point during the entirety of my residence under CHMC have I had a parking space that I could access.  CHMC has given no indication that they will ever give me an accessible spot.").

As noted above, Plaintiff himself informed the Court that his driver's license would not be renewed due to his medical conditions, see ECF No. 75, and his ophthalmologist confirmed that Plaintiff no longer meets the legal vision requirements for operating a motor vehicle, see ECF No. 78.  Plaintiff also provided a copy of his expired driver's license, see id., and testified at his deposition that he has not operated a motor vehicle since at least June or July of 2015, Harris Depo. at 23:5-7, 25:15-17.  Based on these uncontroverted items in the evidentiary record, there is no longer any live case or controversy in this matter.  Because Plaintiff is no longer able to drive, he no longer has a "personal stake" in the relief he has requested in this lawsuit—he no longer has any need for an accessible parking space, and is no longer being deprived of this accommodation.  See, e.g., Russman, 260 F.3d at 119 ("Mootness is a recurring phenomenon in students' suits to vindicate constitutional rights associated with the conditions of their education: a student's graduation ends his [or her] individual interest in the conditions of education at his [or her] former school."); Ojo v. Wolf, No. 20-cv-06296 (EAW), 2021 WL 795320, at *2

14

(W.D.N.Y. Mar. 2, 2021) ("Here, the relief sought by Petitioner over which this Court had jurisdiction related to his request to be released from custody and his claims of constitutional violations with respect to his custody.  The petition became moot upon Petitioner's release from detention.").  Accordingly, this case is now moot since "the relief sought . . . is no longer needed."  Martin-Trigona, 702 F.2d at 386.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (ECF Nos. 60, 72) is GRANTED, and the case is dismissed as moot.  The Clerk of the Court is respectfully directed to enter judgment in favor of the Defendants, and to terminate the motions at ECF Nos. 60 and 72.

Dated: September 22, 2021
       White Plains, New York

**SO ORDERED.**

_____
ANDREW E. KRAUSE
United States Magistrate Judge

A copy of this Decision and Order has been mailed to Plaintiff by Chambers.